[No. F005283. Fifth Dist. May 6, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
GLENDA JUNE MANNERS, Defendant and Appellant.

COUNSEL

Richard A. Lieberman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Shirley A. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

WOOLPERT, J.—Defendant appeals her conviction of two counts of Penal Code section 288, subdivision (a),[1] felony lewd or lascivious act with a child under 14, and one count of section 273, subdivision (a)(2), misdemeanor child endangerment. The jury also found true an allegation that the defendant "occupied a position of special trust with respect to the victim upon whom she aided and abetted [G]rant [S]elf in the commission of an act or acts of substantial sexual conduct . . . ." The trial court sentenced defendant to a term of eight years, after having declared her statutorily ineligible for probation based upon the jury's finding.

We need only briefly state the facts. Defendant is the maternal grandmother of the victim, Jerimy S., age seven, who lived with her at the time of the offenses. For a period of time around Easter 1984, Grant Self, whom defendant knew had served time in prison for child molestation, also lived with defendant. During this time frame, defendant twice witnessed without comment as Self sexually molested Jerimy. According to Jerimy, defendant later told him not to tell anyone about what took place.

I.

Defendant does not challenge her conviction; instead, she objects to the court's denial of probation. The trial court rejected probation based upon the special jury finding. The jury finding was in turn based on section 1203.066.[2]

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

[2]Section 1203.066 provides in relevant part: "(a) Notwithstanding Section 1203, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for,

Defendant argues section 1203.066, subdivision (a)(9), does not apply to a defendant, like herself, convicted of section 288 on an aiding and abetting theory. According to defendant, she did not "commit" an act of substantial sexual conduct and was not "the offender"; therefore, the section 1203.066 jury finding should be stricken.

Citing section 31,[3] the Attorney General contends defendant was a principal in the crime and should be punished as a principal under section 1203.066, subdivision (a)(9). To do otherwise would make section 31 meaningless. The Attorney General adds, if the Legislature intended otherwise, it would have used the word "personally" to modify "offender" as it has done with sections 1203.06[4] and 1203.075.[5]

---

nor shall a finding bringing the defendant within the provisions of this section be stricken pursuant to Section 1385 for any of the following persons:
" . . . . . . . . . . . . . . . . . . . . .

"(9) A person who occupies a position of special trust and commits an act of substantial sexual conduct. 'Position of special trust' means that position occupied by a person in a position of authority who by reason of that position is able to exercise undue influence over the victim. Position of authority includes, but is not limited to, the position occupied by a natural parent, adoptive parent, stepparent, foster parent, relative, household member, adult youth leader, recreational director who is an adult, adult athletic manager, adult coach, teacher, counselor, religious leader, doctor, or employer.
" . . . . . . . . . . . . . . . . . . . . .

"(b) 'Substantial sexual conduct' means penetration of the vagina or rectum by the penis of the offender or by any foreign object, oral copulation, or masturbation, of either the victim or the offender."

[3]Section 31 provides: "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising, or encouraging children under the age of fourteen years, lunatics or idiots, to commit any crime, or who, by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command, or coercion, compel another to commit any crime, are principals in any crime so committed."

[4]Section 1203.06 provides in relevant part: "Notwithstanding the provisions of Section 1203:
"(a) Probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any of the following persons:
"(1) Any person who *personally* used a firearm during the commission or attempted commission of any of the following crimes:
" . . . . . . . . . . . . . . . . . . . . .

"(2) Any person previously convicted of a felony specified in subparagraphs (i) through (ix) of paragraph (1), who is convicted of a subsequent felony and who was *personally* armed with a firearm at any time during its commission or attempted commission or was unlawfully armed with a firearm at the time of his or her arrest for the subsequent felony. . . ." (Italics added.)

[5]Section 1203.075 provides in relevant part: "Notwithstanding the provisions of Section 1203:
"(a) Probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, nor shall a finding bringing the defendant within the provisions of this section be stricken pursuant to Section 1385 for, any person who, with the intent to inflict

Section 31 does not apply to grants of probation. Section 31 defines aiders and abettors as principals in the commission of a criminal offense. Here, however, we are not dealing with an offense or an element of an offense, but rather an accomplice's personal conduct during the offense.

An appropriate analogy exists in the law of penalty enhancement. In *People* v. *Walker* (1976) 18 Cal.3d 232 [133 Cal.Rptr. 520, 555 P.2d 306], the state Supreme Court held a defendant must personally use a firearm in the commission of a felony in order to be subjected to the enhanced penalty provided by section 12022.5, even though the statute at that time contained no such express limitation. To reach this result, the court searched for the legislative intent. First, it looked for a direct expression in the section making it applicable to particular persons and classes of persons; and second, the court examined the legislative history behind the code provision.

Finding no express direction in the language or legislative history of section 12022.5, the *Walker* court analyzed the problem as follows: "Generally, if a statute is intended to impose a derivative liability on some person other than the actor, there must be some legislative direction that it is to be applied to persons who do not themselves commit the proscribed act. Such a direction is found in section 31 which fixes responsibility on an aider and abettor for a crime personally committed by a confederate. But the statute which defines aiders and abettors as principals in the commission of a criminal offense does not also purport to impose additional derivative punishment grounded on an accomplice's personal conduct, as those statutes which provide for such increased punishment ' "do not define a crime or offense but relate to the penalty to be imposed under certain circumstances." ' (*People* v. *Strickland, supra,* 11 Cal.3d 946, 961 [114 Cal.Rptr. 632, 523 P.2d 672] quoting from *People* v. *Provencher* (1973) 33 Cal.App.3d 546, 550 [108 Cal.Rptr. 792]; see also *People* v. *Henry* (1970) 14 Cal.App.3d 89, 92 [91 Cal.Rptr. 841].) Hence the rules which make an accused derivatively liable for a crime which he does not personally commit, do not at the same time impose a derivatively increased punishment by reason of the manner in which a confederate commits the crime.

". . . . . . . . . . . . . . . . . . . . .

"Our conclusion, of course, is also compelled by the established policy 'to construe a penal statute as favorably to the defendant as its language

---

such injury, *personally* inflicts great bodily injury on the person of another in the commission or attempted commission of any of the following crimes: . . ." (Italics added.)

and the circumstances of its application reasonably permit; . . . the defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute.' (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].)'' (*People* v. *Walker, supra,* 18 Cal.3d at pp. 241-242.)

In the present case, the Legislature made no express differentiation in section 1203.066, subdivision (a)(9), between a perpetrator and an aider and abettor as it did in section 1203.06 and section 1203.075, the examples cited to by the Attorney General. Whether the absence of the word "personally" in section 1203.066, subdivision (a)(9), denotes a legislative intent to apply the code section to aiders and abettors, as well as to perpetrators, has been a matter of appellate dispute in a related context. Two appellate courts have reached opposite conclusions with respect to section 12022.3, subdivision (b), an arming enhancement provision for certain sex offenses. (*People* v. *Reed* (1982) 135 Cal.App.3d 149 [185 Cal.Rptr. 169]; *People* v. *Le* (1984) 154 Cal.App.3d 1 [200 Cal.Rptr. 839].)

In *Reed,* the Third District Court of Appeal found the language of section 12022.3, subdivision (b), ambiguous when it compared that section with other enhancement provisions. It noted sections 12022, subdivision (b), 12022.7, and 12022.5, expressly required "personal" culpability, while section 12022, subdivision (a), applied whether or not the defendant was personally armed: "Thus the Legislature has demonstrated that it knows how to limit the scope of an enhancement provision to one who personally commits the proscribed act by expressly so declaring when that is the effect it intends to achieve. Conversely, the Legislature has also shown that it knows how to impose vicarious liability under an enhancement provision by expressly and unmistakably so declaring its intent. Section 12022.3, subdivision (b) does not measure up to either of these exemplars of legislative clarity. Section 12022.3, subdivision (b), does not expressly direct its application to particular persons or classes of persons. Therefore, in that respect, it suffers from the same uncertainty as former section 12022.5, a condition which required the Supreme Court 'otherwise [to] determine the legislative intent' of the latter provision. (*People* v. *Walker* (1976) 18 Cal.3d 232, 240 [133 Cal.Rptr. 520, 555 P.2d 306].)

". . . . . . . . . . . . . . . . . . . . . . . . .

". . . Since section 12022.3, subdivision (b), unlike other enhancement provisions, does not include such express legislative direction, it is reason-

ably susceptible to a construction which permits additional punishment only when the defendant is personally armed with a firearm or other deadly weapon." (*People* v. *Reed, supra,* 135 Cal.App.3d at pp. 152-153, fn. omitted.)

By contrast, the Fourth District Court of Appeal in *Le* determined a "specific legislative directive" was not required in order to impose derivative liability. (*People* v. *Le, supra,* 154 Cal.App.3d at p. 12.)

In a recent decision regarding section 288a, this court in effect followed the *Reed* approach to statutory construction. In *People* v. *Culbertson* (1985) 171 Cal.App.3d 508 [217 Cal.Rptr. 347], we held the 10-year age differential referred to in section 288a, subdivision (c), related to the two persons directly involved in an act of oral copulation, not to the victim and an aider and abettor. (*Id.,* at p. 511.)

"When subdivision (c) is compared to subdivision (d) of section 288a, it seems clear the Legislature can write a statute intended to encompass persons beyond the two directly involved in a sexual act if it desires to do so. Subdivision (d) provides in part, 'Any person who, while voluntarily acting in concert with another person, *either personally or by aiding and abetting such other person,* commits an act of oral copulation . . . .' Had the Legislature intended a similar result in subdivision (c), they could have inserted a similar phrase in that subdivision. For example, if subdivision (c) provided that 'Any person who participates in an act of oral copulation, either personally or by aiding and abetting another person, with a minor under 14 years of age and more than 10 years younger than he . . .' there would seem to be little question that defendant could properly be convicted upon proof that she herself was 10 years or more older than the minor victim. The statute is not thus written, and therefore that result does not follow.

". . . The People's construction of the statutory language would also offend the more particularized rule that '"[i]t is the policy of this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit . . . ."' (*Carlos* v. *Superior Court* (1983) 35 Cal.3d 131, 145 [197 Cal.Rptr. 79, 672 P.2d 862].)" (*People* v. *Culbertson, supra,* 171 Cal.App.3d at p. 515.)

While in *Culbertson,* the legislative history did not assist us in evaluating the language of the section, the legislative history in the present case is helpful.

"Concerned with the serious problem of sexual abuse of children, in the 1981-1982 session the Legislature focused on the crime of lewd and lascivious acts upon a child. It increased the prison sentence (Pen. Code, § 288) and the circumstances in which five-year sentence enhancements may be imposed (Pen. Code, § 667.51), it provided for indeterminate sentence under certain circumstances (Pen. Code, § 667.51) and it placed limitations on probation and suspended sentence (Pen. Code, §§ 1203.065, 1203.066). (Stats. 1981, ch. 1064, p. 4093.)" (*Baker* v. *Superior Court* (1984) 35 Cal.3d 663, 670, fn. 7 [200 Cal.Rptr. 293, 677 P.2d 219].)

In the legislative history of Senate Bill No. 586, in which section 1203.066 was first introduced, we note: "The types and terms of punishment are set to correspond with the level of psychological or physical harm to which the child is exposed during the attack with those exposing the child to the most severe risk of harm calling for a mandatory state prison sentence." (Letter from Chairman of the Joint Committee for Revision of the Pen. Code, to Governor (Sept. 18, 1981).)

These excerpts suggest that the harm to the victim, not the defendant's status, dictates statutory ineligibility for probation under section 1203.066. This concern is similarly reflected in subdivision (c) of section 1203.066, which provides a limited exception to probation ineligibility. Certainly the emphasis of subdivision (c) is on the child victim: the relationship of the child to the defendant (§ 1203.066, subd. (c)(2)), and the threat of physical harm to the child if there is no imprisonment (§ 1203.066, subd. (c)(4)). Thus section 1203.066, subdivision (a)(9), is not reasonably susceptible to a construction which would exclude aiders and abettors from its application.

Given the Legislature's concern over the harm caused by the sexual abuse of children, it appears section 1203.066, subdivision (a)(9), must logically apply to aiders and abettors, as well as to perpetrators. The culpability of a person such as defendant who, in essence, condones such abusive behavior and then attempts to hide it, thereby compounding the psychological harm to the child, must be as great as that of the perpetrator.

## II.

In sentencing defendant, the trial court remarked as follows: "First of all, as the probation officer points out, because the jury made a special finding there was a relationship of trust between the defendant and Jerimy, that probation, special trust under 1203.066(a), probation cannot be granted, so probation for that reason is denied."

Defendant argues the order denying probation is erroneous because the trial court apparently believed it had no power to grant probation. She points

out the court could have granted probation, notwithstanding section 1203.066, subdivision (a)(9), if it had made all of the following findings:

"(1) The defendant is the victim's natural parent, adoptive parent, stepparent, relative, or is a member of the victim's household who has lived in the household.

"(2) Imprisonment of the defendant is not in the best interest of the child.

"(3) Rehabilitation of the defendant is feasible in a recognized treatment program designed to deal with child molestation, and if the defendant is to remain in the household, a program that is specifically designed to deal with molestation within the family.

"(4) There is no threat of physical harm to the child victim if there is no imprisonment. The court upon making its findings pursuant to this subdivision is not precluded from sentencing the defendant to jail or prison, but retains the discretion not to. The court shall state its reasons on the record for whatever sentence it imposes on the defendant." (§ 1203.066, subd. (c)(1)-(4).)

Defendant further argues she qualified for probation under these criteria. Citing *People* v. *Langevin* (1984) 155 Cal.App.3d 520 [202 Cal.Rptr. 234], she concludes her case should be remanded for resentencing because the record must reflect the court is aware it has the discretion to grant probation. The Attorney General responds that because defendant occupied a position of special trust and was convicted of section 288, subdivision (a), the court properly denied probation.

Neither the transcript of the sentencing hearing nor the report of the probation officer reflect the court's awareness that it had discretion to grant probation under section 1203.066, subdivision (c). In *People* v. *Langevin, supra,* 155 Cal.App.3d at page 524, the court wrote: "Where the Legislature establishes a sentencing norm and requires the court explicitly to justify a departure therefrom, and the court sentences in conformity with the legislative standard, all that is required on the appellate record is a showing that the court was aware of its discretion to select an alternate disposition. (See *People* v. *Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8 [193 Cal.Rptr. 882, 667 P.2d 686].) In the present case the court's awareness and exercise of discretion is manifest. The probation report recommended and defense counsel urged the court to find defendant's case an exceptional one under Penal Code section 1203, subdivision (e)(2), and the court's statement when it denied probation was responsive to the grounds urged."

Here the sentencing norm is an order *denying* probation and the court must expressly justify an order *granting* probation. However, there is no showing that the trial judge knew he could grant probation under the appropriate circumstances. Thus, the matter must be remanded to the sentencing court so the court may expressly exercise its discretion, as it deems appropriate.

The judgment is affirmed. The matter is remanded for resentencing.

Franson, Acting P. J., and Hamlin, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 24, 1986.