Filed 9/26/16  P. v. Rivera CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G051164 |
| v. | (Super. Ct. No. 14CF0855) |
| LUIS ENRIQUE RIVERA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Affirmed.

Reed Webb, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Charles C. Ragland and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

Luis Enrique Rivera appeals from a judgment after a jury convicted him of first degree burglary, domestic battery with a prior domestic violence conviction, two counts of making criminal threats, two counts of violating a protective order with a prior conviction for domestic violence, misdemeanor domestic violence and misdemeanor vandalism. On appeal, Rivera contends the trial court erred in selecting the upper term for burglary based on the victim being particularly vulnerable, and that the court erred in imposing multiple punishments for domestic battery and one of the criminal threat counts. None of his contentions have merit, and we affirm the judgment.

FACTS

Rivera married the victim, Jane Doe, in 2003. Throughout their marriage, Rivera engaged in acts of domestic violence. At times the couple separated and then later reconciled, making an effort to work things out. In May 2001, Doe obtained a three-year restraining order against Rivera. This case involves two incidents of domestic violence occurring in June 2013 and March 2014.

Rivera has a lengthy criminal history. In July 2004, Rivera pleaded guilty to spousal battery. (Pen. Code, § 273.5, subd. (a).)[1] In October 2006, he pleaded guilty to spousal battery (§ 273.5, subd. (a)), and in August 2008, he pleaded guilty to violating a protective order (§ 166, subd. (c)). And in May 2011, he pleaded guilty to assault by means of great bodily injury (§ 245, subd. (a)(1)), spousal battery (§ 273.5, subd. (a)), criminal threats (§ 422), and false imprisonment (§ 236).

One night in June 2013, Rivera and Doe attended a party. Rivera became intoxicated, and there was an altercation. During the quarrel, Rivera hit Doe and kicked her with his shoe or boot while she was on the ground. The impact caused Doe to sustain two open wounds on her forehead, leaving a scar and bruising around her eyes. During the clash, Rivera threatened to kill Doe. When Rivera finally left, a terrified Doe fled

---

[1] All further statutory references are to the Penal Code.

with her children to her mother's home in Lake Elsinore because she did not feel safe inside her own home.

On March 8, 2014, the couple was still separated and Doe was living with her mother. That afternoon, Rivera, who appeared drunk, arrived at Doe's home. Doe first saw Rivera as she was returning to the house after throwing away the trash. Without saying a word, Rivera grabbed Doe by the hair and began dragging her to the trash cans. Doe broke free and rushed inside her home and locked the door. Doe placed sofas in front of the door to further block Rivera from entering. Rivera then began banging on the door and demanded that Doe let him in. Rivera yelled at Doe, "You know what I am capable of doing to you." Doe understood Rivera's threat to mean he would injure her so severely she would probably die. Doe told Rivera to leave and ran to the bathroom with her children. She then called the police.

When police arrived, they found Rivera with blood dripping from his hands and blood on his mouth. When they asked Rivera if he had any weapons, Rivera consented to being searched, and they found and removed a box cutter in his pocket. The police officers also observed significant damage to Doe's home. The front security screen door was mangled, and the doorknob was pulled apart. The glass in the window next to the front door was broken out and shattered glass was on the ground. The screen from the shattered window had been pulled through the security bars. Doe testified this damage was not there prior to March 8th.

When the police first attempted to make contact with Doe, they were unable to reach her because the door would not open. The police attempted to force the door open from the outside. Eventually, Doe was able to open it from the inside. Doe told the police officers the back of her head was sore where Rivera had pulled her hair. They observed the back of Doe's head was slightly swollen.

For the June 2013 incident, Rivera was charged with domestic battery with a prior domestic violence conviction (§ 273.5, subds. (a) & (c)(1)), making criminal

3

threats (§ 422, subd. (a)), and violating a protective order with a prior conviction for domestic violence (§ 166, subd. (c)(4)). For the March 2014 incident, Rivera was charged with first degree burglary (§§ 459, 460, subd. (a)), making criminal threats (§ 422, subd. (a)), violating a protective order with a prior conviction for domestic violence (§ 166, subd. (c)(4)), misdemeanor domestic violence (§ 243, subd. (e)(1)), and misdemeanor vandalism (§ 594, subd. (a)/(b)(2)(A)). It was alleged Rivera had previously been convicted of spousal battery and had violated a protective order within the past seven years. A jury convicted Rivera of all counts.

Although he did not testify at trial, Rivera advised the probation officer he was "a little more than tipsy" the night of the incident. Rivera indicated he got into an argument with Doe because she had lied to him. According to Rivera, he walked out of the house with Doe and they were arguing about her taking out the trash. Rivera did not consider Doe to be a good housekeeper. Rivera reported Doe was pregnant with their third child at the time of the incident.

According to Rivera, he had his keys with him and could have let himself inside the house. Rivera understood he "blew things out of proportion." He admitted having an anger problem and that he had hit Doe in the past. Rivera said he felt badly, ashamed, and embarrassed after he has abused Doe. With respect to his future plans, Rivera indicated he wanted to get out of custody as soon as possible, obtain his GED certificate, continue to be in his children's lives, take care of his diabetes, and enroll in anger management classes.

Rivera's trial counsel filed a lengthy statement in mitigation. Counsel pointed out the trial evidence established Rivera had keys to the house, which Doe gave to him. In speaking with the probation officer, Rivera never tried to deny or diminish the wrongfulness of his conduct. Rivera said he was very sorry for what he had done and had no one to blame but himself. Counsel attested to the fact Rivera had shown true awareness and sincere remorse for his wrongful conduct.

4

With respect to mitigating factors, Rivera's counsel listed the following: (1) Doe did not suffer great bodily harm; (2) Rivera was not armed with a weapon; (3) the manner of the crime did not evidence planning, sophistication, or professionalism; (4) Rivera had never suffered a felony conviction, been placed on formal probation, or served time in prison; (5) the most time Rivera had served in custody was 120 days; (6) Rivera voluntarily acknowledged wrongdoing at the time of arrest and had shown remorse throughout the proceedings; (7) at the time of the offense Rivera was not properly treating his diabetes; (8) Rivera's last conviction for domestic violence was in 2009 and the domestic violence restraining order was set to expire just two months after the offense; (9) Doe indicated she was trying to work things out with Rivera and had provided him with keys to her house; and (10) at trial Doe said she still had feelings for Rivera and wanted him to continue to be a part of their children's lives.

At the sentencing hearing, the court acknowledged it had received the probation report, two letters from Rivera's brothers, the prosecution's sentencing brief, the defense's statement in mitigation, and a motion to reduce two counts to misdemeanors pursuant to section 17, subdivision (b)(3).

After considering argument from both counsel, and having considered all of the documents before it, the court denied the section 17, subdivision (b)(3), motion, denied probation, and sentenced Rivera to nine years in prison. The court imposed the upper term of six years for the burglary offense (count 1), a consecutive term of 16 months for the domestic battery with a prior domestic violence conviction (count 2), a three-year concurrent term for one of the criminal threat convictions (count 3), and a consecutive term of eight months for the other criminal threat conviction (count 4). The court stayed the three year terms under section 654 for both violations of protective orders with a prior domestic violence conviction (counts 5 and 6). Additionally, the court ordered Rivera to serve one consecutive year in the Orange County jail for the

5

misdemeanor domestic battery conviction (count 7) and a six-month jail term, concurrent with his prison sentence, for the misdemeanor vandalism conviction (count 8).

In imposing the upper term on the burglary count, the court concluded the victim was particularly vulnerable because she was in her own home and had to retreat to a locked room to protect herself. In addition, the court noted Rivera had previously been granted probation on numerous occasions and had not successfully completed probation. And finally, the court acknowledged a protective order was in place at the time of the offenses. The court found the domestic battery (count 2) and the criminal threat (count 3) offenses relating to the June 2013 party were not subject to section 654. It reasoned there was a sufficient break in the conduct to justify a sentence on both counts.

## DISCUSSION

Rivera asserts the imposition of the upper term for burglary based on the victim being particularly vulnerable was not supported by the record. Additionally, he claims the court erred in imposing multiple punishments for the domestic battery and criminal threat offenses relating to the June 2013 party (counts 2 and 3). As we explain below, both contentions lack merit.

*Upper Term on Burglary Count*

Rivera argues that because Doe was able to find refuge in her home she could not be deemed a particularly vulnerable victim. He notes Doe was able to quickly get inside her house to escape him and the structure was secured by both a security screen door and a wooden door. Doe successfully buttressed the wooden door with sofas. She then was able to lock herself in an interior room and call for help. Rivera explains that by taking these measures, Doe was able to fend off Rivera for at least 30 minutes before the police arrived.

The Attorney General contends Rivera forfeited this sentencing claim because he never objected to the sentence or any of the court's reasons for imposing the upper term. "[C]omplaints about the manner in which the trial court exercises its

6

sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.)

Rivera concedes the issue of forfeiture but suggests this court should exercise its discretion to address the matter. He correctly notes appellate courts may overlook the forfeiture issue and address the merits of the claim to forestall a habeas corpus claim of ineffective assistance of counsel. We agree Rivera forfeited the issue by failing to object in the trial court, but to avoid a future claim of ineffective assistance of counsel we will address the claim on the merits.

We review a trial court's sentencing decision for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) A trial court has broad discretion in sentencing a defendant, and we presume it exercised its discretion properly, absent evidence to the contrary. (*People v. Montano* (1992) 6 Cal.App.4th 118, 121, disapproved on another point in *People v. Howard* (1993) 17 Cal.App.4th 999, 1002-1004.) In the absence of a clear showing of abuse, the trial court's sentencing discretion will not be disturbed on appeal. (*People v. Giminez* (1975) 14 Cal.3d 68, 72.) Reversal should only occur when there is a "clear showing the sentence is arbitrary or irrational." (*People v. Ogg* (2013) 219 Cal.App.4th 173, 185.)

The "particularly vulnerable" sentencing factor means the victim is vulnerable "'in a special or unusual degree, to an extent greater than in other cases [and is] defenseless, unguarded, unprotected, accessible, assailable . . . susceptible to the defendant's criminal act.' [Citation.]" (*People v. Clark* (1990) 50 Cal.3d 583, 638.) Rivera offers no authority for his argument Doe was not vulnerable because she was able to escape to her house and avoid further harm. Rivera surprised Doe when she was taking out the trash and separated from her children inside the house. The fact she was able to escape does not diminish her initial vulnerability.

Even if we were to find there were insufficient facts to support the vulnerability finding, selection of the upper term was not an abuse of discretion. In

7

addition to the vulnerability finding, the court cited Rivera's unsatisfactory performance on probation and the violation of the protective order as a basis for imposing the upper term. A single factor in aggravation will support imposition of an upper term. (*People v. Osband* (1996) 13 Cal.4th 622, 730.) A judge's discretion to identify aggravating factors in a case is guided by only by the requirement the factors be "reasonably related to the decision being made." (Cal. Rules of Court, rule 4.408(a).) Under the California scheme, a judge is free to base an upper term sentence on any aggravating factor the judge deems significant, subject to specific prohibitions on double use of aggravating factors that constitute elements of the crime or an enhancement.

*Section 654*

Rivera argues the imposition of separate punishment on the domestic violence and criminal threat counts (counts 2 and 3) was barred by section 654. He focuses on the trial court's statement there was a "sufficiently significant break in the conduct" for the court to impose separate sentences on these counts. Rivera maintains this finding cannot be reconciled with the victim's testimony Rivera said he was going to kill her "while he was kicking [her]," and the record does not support a finding that there was a break in the conduct. (Italics omitted.) We find no error.

Section 654, subdivision (a), provides, in pertinent part, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 is intended "to insure that a defendant's punishment will be commensurate with his [or her] culpability." (*People v. Perez* (1979) 23 Cal.3d 545, 552.) The statute bars multiple punishment for both a single act that violates more than one criminal statute and multiple acts, where those acts comprise an indivisible course of conduct incident to a single criminal objective and intent. (*People v. Latimer* (1993)

8

5 Cal.4th 1203, 1208.)  Conversely, where a defendant commits multiple criminal offenses during a single course of conduct, he or she may be separately punished for each offense he or she committed pursuant to a separate intent and objective.  (*People v. Beamon* (1973) 8 Cal.3d 625, 637-639.)

Whether multiple convictions were part of an indivisible transaction is primarily a question of fact for the trial court.  (*People v. Coleman* (1989) 48 Cal.3d 112, 162.)  We review a challenge under section 654 for substantial evidence to support the trial court's determination.  (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 [no reversal if any substantial evidence supports trial court's findings].)

As Rivera points out, Doe testified the threat was made while Rivera was engaged in kicking her.  His blows were certainly a course of conduct causing Doe physical injuries.  And although Rivera's threat was made during the course of the kicking, the threat evinced a separate intent and objective.  As explained in section 422, subdivision (a), "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . is to be taken as a threat" is guilty of the crime of criminal threat.  This is true even if there is no intent of actually carrying out the threat, provided the threat is "unequivocal, unconditional, immediate, and specific so as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat." (§ 422, subd. (a).)  Additionally, the threat must cause the threatened "person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety."  (*Ibid.*)  In other words, the victim sustains a psychological injury.

Here, the intent and objective of the criminal threat was to cause Doe to experience sustained fear for her safety.  This was separate from and in addition to the infliction of corporal injury caused by blows to her head.  We find no error in the court's conclusion section 654 did not bar imposition of a separate punishment for counts 2 and 3.

DISPOSITION

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


THOMPSON, J.